United States v. Anderson is our next case for argument today. Mr. Donovan. Good morning. May it please the Court. I'm Attorney Chris Donovan and I represent DeAngelo Anderson on appeal. The District Court correctly found that significant portions of Mr. Anderson's trial were closed to the public because it was held in a locked courthouse after 5 o'clock at night. This included the testimony of three witnesses, save two minutes of one of them. Half the defense closing argument... Counsel, Judge Rovner is asking a question. I'm sorry. Sorry. Is there any evidence that anyone tried to enter the building after 5 and was unable to do so? Or evidence that people who were already in the courtroom were required to leave after 5? No, Your Honor. So it was the... that if you arrive after the time for the concerts start, you won't be seated. Does that mean that the CSO's concerts are non-public? I don't think that CSO concerts would be governed by the Sixth Amendment. Would you answer my question? You can tell me later why you think I should have asked a different question. I'm sorry. So they have a policy that says if you arrive after 5 o'clock, you can't enter? If you arrive after the concert starts, you can't enter. I would say, yes, it is close to the public at that point. Even though there are thousands and thousands of people there, and everybody who actually wants to attend attends. That's my problem with your argument here. Anybody who wanted to attend had only to arrive by 5. There's no contention that anybody was thrown out. So there's a time limit. And my question is, why would one want to say that a time limit for arrival makes something non-public? No one in his right mind would say that the Chicago Symphony performs non-public concerts. Well, I think there could be people who want to see just certain parts of the trial and not necessarily the entire trial. So they have to arrive by 5. And they might have to wait an entire hour. Well, the second night was much more than one hour. If you want to see an argument in the Supreme Court, you might actually have to wait in line overnight. Does that make the Supreme Court's arguments non-public? I think that's probably more of a space issue than whether or not it's a timing issue. You know, the parts that were closed here were significant, too. This wasn't like the other cases. No, but, counsel, the problem is I can't see that any parts were closed to the public. No one seems to have wanted to get in after 5. And anybody who wanted to get in could get in and see as much as they wanted. Again, I hadn't considered that, to be honest. I believe perhaps, again, if someone wanted to see just the return of the verdict, for example, that was near 9 o'clock at night. They might not have been privy to the conversation. Is there a public right to go in and out at all times in a trial? I believe so, yes. Where is that established? I mean, the Supreme Court has talked about that it's a fundamental right and it applies to both the defendant and the public. The question is, is there a fundamental right to go in and out? As you please. As you please. I'm not aware of any decision of the Supreme Court establishing that. It's certainly not established by the Sixth Amendment or by its own. I mean, I'm not aware of any cases that say that either. But to me, the Sixth Amendment means that a trial has to be open to the public all the time, not just for certain portions of it or up to certain times. For example, the public wasn't privy to some of these discussions that maybe occurred either at sidebar or in some of these pretrial hearings that said the trial might go past 5 o'clock. So the public wouldn't even be unnoticed necessarily that this was going to go past 5 o'clock, perhaps they want to see just the return of the verdict, they want to see the judge read the instructions, they want to see only closing arguments. And so I don't know that you can parse the Sixth Amendment to say, well, it's open under certain circumstances and not others. I think that it's clear it's open under all circumstances. Let me come at this from a slightly different angle, Mr. Donovan. I assume that the use of magnetometers at courthouse entrances does not violate the Sixth Amendment, does it? I would say no. Or the requirement that you show a photo ID before you go in, right? I would say no. Okay. How is a locked door that is attended by a guard constitutionally different from that? Well, I mean, the other two present, well, the magnetometer presents safety issues, which obviously I think the court can enforce to make sure that the building itself is safe and the attendants are safe and of that nature. The photo ID issue I guess I'm not as clear on. I know that the courthouse in Milwaukee used to do that, then they stopped doing that, so I'm not sure if that would be of the same kind, whereas a courthouse being locked period and no one's admitted for any reason is different. My question was about a locked door attended by a guard who has instructions to let people come in to visit the trial. Well, then I would say that is open. I mean, if people can access it after 5 o'clock and there's a way for them to get in, then I think that is open to the public. Okay. Do we have any evidence that that didn't happen here? No, we don't. Okay. Is this a recurring problem in Milwaukee? I don't know. I don't think it is after this. I think that this case actually did bring it to the party's attention. I think it's now being raised in different trials. I think Mr. Proctor might be able to speak to that more than I can. So apparently maybe up until this it has been, but I think it's now been corrected and they make arrangements for the courthouse to remain open. And that's an important part here, too, is even if the judge had talked about going past 5 o'clock, that didn't necessarily put the parties on notice that the courtroom was going to be closed or that arrangements weren't made for the main entrance to be open and for people to come in. Again, that's just not in this record one way or the other. That would be speculation to assume that even if he agreed to go past 5, that he agreed that the courtroom was going to somehow be closed. So I just don't think that the Sixth Amendment gets parsed like that. I think it's either the courtroom is open or it's not open. I think this is very similar to Walton. This is what happened in Walton. In Walton it was open during the day. In Walton there was a contention, which the court accepted, that people who wanted to come were turned away and not allowed to enter. And you've already said there's no such evidence here. That's right. But I don't think that's required because once a closure is shown to be improper, the Supreme Court's made clear that the error is structural. You don't have to show prejudice. It also made clear in Weaver that an objection is required. I believe that's only in the context of an ineffective assistance of counsel claim. We're not raising this as ineffective assistance. This was brought to the court's attention. The court said that an objection is required, and if you don't have one, the only way to proceed is by arguing ineffective assistance and failing to make the objection. That's the court's conclusion. So if you have no objection and are not arguing ineffective assistance, how does your claim survive Weaver? I don't believe that Weaver overturned Walton, and Walton just doesn't require that. Walton says this has to be a personal waiver. Between the Seventh Circuit and the Supreme Court, guess which one prevails? I understand that, but I don't think the— Weaver said an objection is required, and if there is none, you have to turn to ineffective assistance. Given that rule, how can you succeed in this appeal? Because we didn't raise it as ineffective assistance, I don't think it comes into play. I don't think Weaver governs here, and I don't think that Weaver overturned Walton on that issue. I think that the structural error line of cases still survived Weaver, and that if it's properly presented, which we claim, or we argue here, that it was properly presented under the post-conviction motions that were filed, that avoids plain error and it also avoids waiver, and I think Walton's intact. I'll save, I guess, another minute or two for rebuttal, unless the court has any questions before I sit down. All right. Thank you. Thank you, Your Honors. May it please the court. Mr. Proctor. Yes, sir. Yes, Judge. I'm glad you've just been called. Thank you. I believe Your Honor hit it on the head. Here we did, there were no instructions by the district court that people were going to be excluded from the courtroom. The courtroom itself was never cleared. The district judge made these points in his post-conviction order. Is the building actually locked at 5 p.m.? Is there a guard or some person at the door, at the entrance of the building who could contact the courtroom if people tried to gain entry after the trial at 5 p.m.? Or is it a given that no one comes in? Your Honor, in preparing this appeal, I did inquire about this. The front doors of the Milwaukee courthouse are manned with court security officers until 5.30. However, my understanding is that they do close the front doors at about 5 and they're there to allow people to go out. The magnetometers are still operating at that point, but it's mostly to let people go out until 5.30. Anytime there is a trial going on or a court proceeding in the district court, there's going to be a court security officer in the courtroom as well as a court security officer in the main control room monitoring the exterior of the building, the interior of the building. If that answers your question. I mean, can anyone come in after 5? That isn't already in the building. The district court noted that anybody who wanted to get in could have called the court. And I don't have indication whether or not court security officers were posted by doors after 5.30. And when you say called the court, who do you call? The court, Judge Adelman's chambers, has a public number. The judge noted that in his order on post-conviction motion. That was the basis for trial counsel's assertion that the courtroom was closed because he had to call the court to get back in. The trial judge here noted in his order that any other member of the public could have done that as well. Now, of course, Judge Adelman knew ahead of time that the trial was going to extend beyond that 5 o'clock time when the building closes. And, I mean, in that situation in which the public trial issue could have been so easily avoided, does the failure, well, I guess I should say doesn't the failure to do so, reflect somewhat of a disregard for the four values that are protected by the public trial provision? I mean, there are people who work, who can't get there before 5 o'clock. There are all sorts of reasons. Your Honor, I don't dispute your assertion that, yes, this argument made by the appellant could have been nipped in the bud very easily. But the judge here started trial early in the morning. We took 13 witnesses that first day, and the judge is managing the witnesses. He's managing the jurors. He's managing trial counsel, looking for breaks in testimony. Anything unusual about any of that, do you think? I don't think it's unusual, particularly in this case, Your Honor, where prior to calling witnesses, the last two witnesses for that day, the court held sidebars with counsel, and the court, while those were off the record, the comments to the jury immediately after that, the judge said, we're going to do one more witness and then we're done for the day, indicates that that was the conversation that was going on at that time amongst the parties. The judge, the most reasonable takeaway from that is that defense counsel said, yeah, let's go ahead, and we had one more witness waiting who had been waiting all day. Let's get that witness in. The jury was ready to accept that one more witness, and then we'd get done. So this is a trial that ran a little late, but it doesn't impact the core factors that animate the Sixth Amendment. And, yes, while it could have been nipped in the bud, as I mentioned, it doesn't rise to a constitutional violation here, especially, as noted, nobody was ever excluded from this courtroom at any time, and as the judge noted, he would have allowed anybody to stay as long as they wanted. Had an objection been raised, the judge would have addressed it however it was raised, but that didn't happen in this case. Thank you. For those reasons, Your Honor, I do argue that he has waived his claim in this case, and I present that based on the facts here, the notice, the participation in these sidebar conferences, but also because the objection here goes to the overall administration of the trial. Typically, a defendant would want to object and raise a contemporaneous objection in order to make sure that the rights aren't violated. We have the opposite here. The defense can sit on this type of a claim, not raise it, facilitate the judge going a little bit past five, knowing that it's not going to hurt their defense of any of the evidence, but they can keep it in their back pocket to try to raise on appeal later, claiming that their rights were violated. Mr. Proctor, could you address the sentencing question here, particularly given that Judge Adelman acknowledged the tension in law on the subject with the mandatory consecutive sentence, cited our Roberson decision, which was later disapproved in Dean. Is there any reason we shouldn't let the judge take another look at this? My comment on that is the record here, I believe, clarifies the issue. Judge Adelman understood the argument to be made that it was essentially a net zero sentence to be on count one with the additional 60 months. But as soon as after he mentions the Roberson decision, he says it's in some tension, the defendant's recommendation is in some tension with that. I will go ahead and consider his total sentence recommendation of 84 months total with 24 months credit for time served. However, I find that to be insufficient. These are at pages 27 and 28 of the sentencing transcript. The judge then goes and says, I'm going to consider the government's total recommendation of 170 months, which is 110 months on the two counts, and then counts three and four, and then the mandatory minimum of 60 months on the other one. He says, that's your total recommendation. I find that to be too harsh based on some mitigating factors. And then he goes through the factors under 3553A and determines that a sentence of 96 months total is the most appropriate sentence in this case. So where the judge specifically says, I'm going to consider your argument, even though I recognize that it's in some tension with this Roberson decision, I find that your overall sentence is too lenient. And I think that that part of the record negates a need to send this back to the judge. If there are any other questions, I'm happy to answer them. Otherwise, I ask that this court affirm the district court. Mr. Donovan. Thank you. I'd just like to make two brief points. Nothing in the cases that I've read from the Supreme Court or this court contemplates or I don't think talks about parsing the Sixth Amendment the way that some of the questions here today contemplated. I think that Walton is directly on point. I think Walton directly governs. If this court feels we've overruled it, so be it. But otherwise, if Walton is still good law, I think it directly governs. And this case is extremely similar and should follow the same course just for that reason. And briefly, just on the sentencing issue to address Judge Hamilton's concern, if the court has any doubt about whether or not this impacted Judge Adelman's decision to impose the sentence it did, issue a Palladino remand. That would be the quick and easy way to ensure that he, that Mr. Anderson is not serving a sentence any longer than Judge Adelman intended. And with that, unless there's other questions, I'll rest. Thank you. Thank you very much. Mr. Donovan, we appreciate your willingness to take the appointment in this case. Thank you. The case is taken under advisement.